**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elise Sullivan,<br><br>          Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV-21-01501-PHX-MTL<br><br>**ORDER** |

Plaintiff Elise Sullivan challenges the Social Security Administration's ("Administration") determination that she does not qualify for Title II Disability Insurance Benefits under the Social Security Act. (Doc. 1.) Sullivan filed a Complaint with this Court seeking judicial review of that determination. (*Id.*) The Court has reviewed the briefs (Docs. 16–18) and the Administrative Record (Doc. 12, "R"). The Court now finds that the administrative law judge's ("ALJ") decision (R at 12–26) contained error and remands this matter to the Administration for further proceedings consistent with this order.

**I.     BACKGROUND**

Sullivan filed an application for benefits on July 11, 2018, alleging disability beginning December 23, 2016. (R at 15.) Sullivan's application "was denied initially on October 10, 2018, and upon reconsideration on March 5, 2019." (*Id.*) Sullivan subsequently requested a hearing that was held telephonically due to the COVID-19 pandemic on June 4, 2020, and September 9, 2020. (*Id.*) An ALJ issued a decision denying Sullivan's application on November 24, 2020. (R at 12–26.) The Appeals Council upheld the ALJ's

decision on July 12, 2021, and the ALJ's decision became final. (R at 1–6.) Following this unfavorable decision, Sullivan filed the present appeal.

After considering the medical record, the ALJ determined that Sullivan had not engaged in substantial gainful activity since December 23, 2016. (R at 19.) The ALJ found that Sullivan had severe impairments—cervical and lumbar spondylosis, peripheral neuropathy, and obesity—but she did not have an impairment that met or equaled an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (R at 19–21.)

In assessing Sullivan's residual functional capacity ("RFC"), the ALJ found that Sullivan's symptom testimony was not consistent with the medical record. (R at 21–23.) With respect to the medical opinions, the ALJ determined that PT Sanford Goldstein's and Dr. Kimberly Stone's medical opinions were not persuasive. (R at 24.) Instead, the ALJ found the medical opinions of Dr. Mikhail Bargan and Dr. J. Hartman persuasive. (R at 23.) Ultimately, the ALJ determined that Sullivan had the RFC "to perform light work as defined in 20 CFR [§] 404.1567(b) except [that Sullivan] can lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk for 6 hours in an 8[-]hour day, and sit for 6 hours in an 8[-]hour day."[1] (R at 21.) The ALJ also determined that Sullivan "can frequently climb ramps and stairs, occasionally climb ladders or scaffolds, frequently balance, stoop, kneel, crouch and occasionally crawl," but she "must avoid concentrated exposure to fumes, odors, dusts, gases and hazards." (R at 21.) Relying on vocational expert testimony, the ALJ determined that Sullivan could not perform past relevant work but could perform the jobs of photocopier operator, cashier II, and merchandise marker. (R at 24–26.) Consequently, the ALJ concluded that Sullivan was not disabled through the date of the decision. (R at 26.)

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a "reasonable mind might accept as adequate to support a conclusion" considering the record as a whole. *Id.* (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). Finally, the Court may not reverse an ALJ's decision on account of an error that is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006). "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1119 n.11 (9th Cir. 2012) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citations and internal quotation marks omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the

claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled; if not, the claimant is disabled. *Id.*

### III. DISCUSSION

Sullivan raises two arguments on appeal. First, the ALJ failed to properly analyze the persuasive value of PT Sanford Goldstein's and Dr. Kimberly Stone's medical opinions. (Doc. 16 at 12–18; Doc. 18 at 4–8.) Second, the ALJ improperly rejected Sullivan's symptom testimony. (Doc 16 at 18–22; Doc. 18 at 8–10.)

### A. Medical Opinion Evidence

In 2017, the rules for evaluating medical evidence were revised. For claims filed on or after March 27, 2017, the revised rules apply. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, 2017 WL 168819 (January 18, 2017). Under the revised rules, all evidence an ALJ receives is considered, but the rules create specific articulation requirements regarding how medical opinions and prior administrative medical findings are considered. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The revised rules do not require an ALJ to defer to or assign every medical opinion a specific evidentiary weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ determines the persuasiveness of the piece of evidence's findings based on factors outlined in the regulations. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The most important factors

are consistency and supportability, but the regulations list others that may be considered: the treatment relationship, specialization, and whether the source has familiarity with other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c).

Regardless of whether the source is an "accepted medical source[]," the revised rules require ALJs to articulate how they consider medical opinions from all medical sources. 20 C.F.R. §§ 404.1520c, 416.920c ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). The revised rules also expanded the list of acceptable medical sources to include licensed audiologists, licensed advance practice registered nurses, and licensed physician assistants. *See* 20 C.F.R. §§ 404.1502, 416.902. These articulation requirements do not apply to the consideration of evidence from nonmedical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

Although it was debated for years, recently, the Ninth Circuit definitively ruled that the "specific and legitimate" standard does not apply to Social Security cases after the regulations were revised. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) Specifically, the Ninth Circuit in *Woods* determined that

> [t]he revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources— contrary to the revised regulations.

Thus, an ALJ need not give specific and legitimate reasons for disregarding the medical opinion of a treating physician. *Id.* at 791.

1.     PT Sanford Goldstein

The ALJ determined that PT Goldstein's medical opinion was not persuasive. (R at 24.) The ALJ also asserted that PT Goldstein's medical opinion "appears to be based on the subjective complaints by the claimant as to her symptoms." (*Id.*) Ultimately, the ALJ determined that PT Goldstein's medical opinion was not persuasive because it is "inconsistent with objective medical exams." (*Id.*) Sullivan argues that this was error because (1) the ALJ did not discuss or consider the medical evidence in the record that does support PT Goldstein's medical opinion and (2) the ALJ wrongly assumed that PT Goldstein's medical opinion was influenced by Sullivan's statements to PT Goldstein. (Doc. 16 at 13–16.) The Commissioner argues that the ALJ was correct to find PT Goldstein's medical opinion not persuasive because "[PT] Goldstein's [medical opinion] w[as] inconsistent with [Sullivan's] treatment notes . . . ." (Doc. 17 at 7; *id.* at 5–8.)

The Court finds that the ALJ did not err when assessing PT Goldstein's medical opinion. Contrary to Sullivan's assertions, the ALJ did not cherry pick from the medical record. Indeed, leading up to the discussion of PT Goldstein's medical opinion, the ALJ highlighted the medical evidence that Sullivan claims the ALJ overlooked. (*Compare* R at 20, 22–24, *with* Doc. 16 at 13–16.) Moreover, in the ALJ's analysis of PT Goldstein's medical opinion, the ALJ succinctly and accurately summarized the relevant pieces of Sullivan's medical record, including the pieces that Sullivan claims were not considered. (R at 24.) Thus, the ALJ finding that PT Goldstein's medical opinion was inconsistent with the record was not error.[2] Because PT Goldstein's medical opinion was inconsistent with the medical evidence, it follows that the ALJ speculating that it was based on Sullivan's subjective complaints was not error. Thus, the ALJ did not err when determining that PT Goldstein's medical opinion was not persuasive.

2.     Kimberly Stone

Similarly, the ALJ determined that Dr. Kimberly Stone's medical opinion was "not

---

[2] *See Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) ("'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" (quoting *Thomas*, 278 F.3d at 957)).

- 6 -

persuasive" and inconsistent with Sullivan's objective medical examinations.[3] (R at 24.) Sullivan argues that the ALJ relied on "isolated normal findings [that] do little to discredit Dr. Stone's assessment" (Doc. 16 at 16) or to strengthen the ALJ's reliance on the state agency nonexamining physicians. (*Id.* at 16–18.) Sullivan also argues that the ALJ failed to explain his decision despite evidence in the record that supported Stone's medical opinion. (*Id.*) Thus, Sullivan asserts, "[t]he ALJ failed to adequately consider and articulate either the supportability or consistency of the assessments from Dr. Stone . . . ." (*Id.* at 17.) The Commissioner argues that the ALJ properly found that Dr. Stone's medical opinion was inadequately supported by the record. (Doc. 17 at 8–9.)

When reviewing the ALJ's decision,

> [t]he Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion considering the record as a whole.

*Supra* Section II (cleaned up). Here, the Court finds that the ALJ's decision regarding Dr. Stone's medical opinion is supported by substantial evidence. The ALJ considered the entire relevant medical record when determining the persuasive value of Dr. Stone's medical opinion. (R at 24.) The ALJ did not exclusively rely on the two examinations mentioned in the paragraph discussing Dr. Stone's medical opinion. (*Id.*) The ALJ discussed Sullivan's relevant medical record in great detail leading up to the discussion of Dr. Stone's medical opinion. (R at 22–24.) The ALJ even explained that he was merely highlighting Exhibits 5F (R at 443–509) and 8F (R at 528–35) as "particularly" good examples of the extensive record that supported his conclusion regarding Dr. Stone's medical opinion. (R at 24.) The ALJ accurately highlights that Exhibit 8F "notes full range of motion, painless range of motion of all major muscle groups and joints, and full strength

---

[3] The ALJ also found the state agency physicians' medical opinions "more persuasive." (R at 24.)

of all muscle groups." (*Id.*) Similarly, in the paragraph right before the discussion of Dr. Stone's medical opinion, the ALJ notes that Exhibit 5F "showed full, painless range of motion of all muscle groups and joints and full strength with complaints of tenderness to [Sullivan's] neck and upper back." (*Id.*) Dr. Stone's medical opinion that Sullivan's ability to sit and walk was limited conflicts with these examination results. Thus, substantial evidence supports the ALJ's decision to classify Dr. Stone's medical opinion as not persuasive and inconsistent with the medical record.

### B. Symptom Testimony

When evaluating subjective symptom testimony, an ALJ must first find objective medical evidence demonstrating an impairment that could reasonably cause a claimant's symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996). A claimant's subjective testimony alone will not establish a disability, and an ALJ will determine whether the claimant's alleged limitations are consistent with medical sources. 20 C.F.R. § 404.1529(a). Once the claimant has shown such an impairment, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only with "specific findings stating clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1283; *see id.* at 1283–84. If "the evidence is susceptible to more than one rational interpretation[,]" the Court will uphold the ALJ's conclusion. *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (superseded by statute on other grounds). A lack of supporting objective medical evidence may not serve as the sole basis to discount a claimant's testimony. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

At the hearing, Sullivan "testified that she is unable to work due to daily back and neck pain and stiffness." (R at 21.) She alleged that she has difficulty walking and sitting and "that she sits down and elevate[s] her legs for pain relief 3–4 times a day for 15–30 minutes depending on severity." (*Id.*) For daily activities, she "reported that she is able to read, do crossword puzzles, prepare meals, go grocery shopping, and stand, sit and walk for up to twenty minutes before experiencing discomfort." (*Id.*) Finally, "[s]he reported

that she could lift a gallon of milk and up [to] twenty pounds as noted on her exertional questionnaire." (*Id.*) In the decision, the ALJ determined that Sullivan's "impairments could reasonably be expected to cause some of the alleged symptoms," but "[her] statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

Sullivan argues that the ALJ failed to meet the applicable standard (specific, clear, and convincing reasons) when assessing her symptom testimony. (Doc. 16 at 18–22.) She asserts that this was error and that this error tainted the vocational expert testimony. (*See id.*) Thus, she concludes, remand is necessary. (*Id.* at 22–23.) The Commissioner argues that the ALJ properly found that Sullivan's symptom testimony was not sufficiently supported by the medical record and her daily living activities. (Doc. 17 at 9–11.) Sullivan counters that the ALJ never made a finding that her daily living activity conflicted with her symptom testimony and never indicated that he relied on her daily living activity when rejecting her symptom testimony. (Doc. 18 at 10.)

The ALJ erred when considering Sullivan's symptom testimony. First, although the ALJ mentioned Sullivan's daily living activities, the ALJ never specifically mentioned or explained whether her daily living activities conflicted with her alleged symptoms. (*See* R at 21–22.) The ALJ only relied on objective medical findings and clinical evidence when discounting Sullivan's symptom testimony. (*Id.*) But the ALJ never specifically and clearly linked that evidence to his decision to discount Sullivan's symptom testimony. (*See id.*) Instead, the ALJ provided a catch-all statement before explaining pieces of the medical record.[4] (*See id.*) The analysis of the medical record was never specifically or clearly linked to Sullivan's symptom testimony. (*See id.*) Stated another way, the ALJ never explained *why* the medical evidence discredited her testimony. (*See id.*) The ALJ did not satisfy the specific, clear, and convincing reasons standard.[5] Thus, remand is necessary.

---

[4] "[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained throughout this decision." (R at 21.)
[5] *Smolen*, 80 F.3d at 1283–84.

- 9 -

### IV. CREDIT AS TRUE RULE

After determining that the ALJ made an error sufficiently serious to warrant a remand, the Court decides whether it will apply the credit-as-true rule. The credit-as-true rule allows a court to remand a Social Security case for an award of benefits rather than remand the case for additional evidence. *Treichler*, 775 F.3d at 1101–02. Whether the credit-as-true rule is mandatory or discretionary in the Ninth Circuit is unclear because Ninth Circuit jurisprudence is split on the issue. *Compare Vasquez*, 572 F.3d at 593–94, *and Garrison v. Colvin*, 759 F.3d 995, 1019–23 (9th Cir. 2014), *with Treichler*, 775 F.3d at 1099–02. The rule can only be applied when three elements are met: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Even then, the rule is rarely applied because the decision to remand or apply the rule is discretionary and courts "frequently exercise[] [their] discretion to remand for further proceedings, rather than benefits." *Treichler*, 775 F.3d at 1102.

Further proceedings would be useful to allow the ALJ to reassess Sullivan's symptom testimony. *Supra* Section III.B. The ALJ could then incorporate the new findings, if any, into hypotheticals posed to a vocational expert. Neither of these changes would require the ALJ to find Sullivan disabled. For example, even if her testimony was credited as true, the vocational expert's opinion could remain unchanged and the ALJ could still conclude that Sullivan is not disabled. Thus, elements (1) and (3) of the *Garrison* test are not met. Therefore the Court will not apply the credit-as-true rule here.

### V. CONCLUSION

Accordingly,

**IT IS ORDERED reversing** the November 24, 2020, ALJ decision (R at 12–26) **and remanding** this case to the Administration for further administrative proceedings.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment consistent with this Order and close this case.

Dated this 7th day of July, 2022.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge